## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LYNNETTE ELIZABETH GREEN,       *
                                       *

     Plaintiff,       *

                                       *

    v.       *       Civil Action No. 8:21-cv-00030-PX

                                       *

CENTRAL TOWING, INC. ET AL,       *

                                       *

     Defendants.       *

                                     ***

## <u>MEMORANDUM OPINION</u>

In this wage and hour case, Plaintiff Lynnette Elizabeth Green sues her former employer, Central Towing, Inc., and its owner, Sanjay Anand, for failing to pay her a minimum wage and overtime, in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (Count I), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Emp. §§ 3-403, *et seq.* ("MWHL") (Counts II & III), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Emp. §§ 3-501, *et seq.* ("MWPCL") (Count IV). ECF No. 1. As relief, she seeks her lost wages as well as liquidated or treble damages.

Defendants answered the Complaint and engaged in discovery. Green next moved for summary judgment in her favor on four issues: (1) that she was a non-exempt employee under the FLSA; (2) that Defendants violated the FLSA in failing to pay her overtime; (3) that she was entitled to liquidated damages; and (4) that Defendants are jointly and severally liable for any future damages award. *See generally* ECF Nos. 21 & 21-2. After a hearing, the Court granted summary judgment in Green's favor as to her non-exempt status and on joint-and-several liability, and otherwise denied the motion. ECF No. 38. The Court also set the matter in for trial on whether Defendants violated the wage and hour laws as alleged.

On January 11, 2023, the Court conducted a one-day bench trial during which three

witnesses testified:  Green, Defendant Sanjay Anand ("Sanjay"), and his daughter, Tanvi Anand ("Tanvi").[1]  The Court also admitted several employment records into evidence.  For the reasons discussed below, the Court finds in favor of Green on all counts.

## I.     Trial Evidence

Central Towing, Inc. ("CTI") provides emergency roadside services for vehicles in the Maryland, Virginia, and District of Columbia region.  Trial Tr. 4:20-22, 89:17-21, 90:15-20, 94:20 – 95:1.  Sanjay owns and operates the business, and Tanvi has worked in the CTI office since 2015, performing payroll, bookkeeping, and other administrative tasks.  *Id.* 90:1-14, 93:3-13, 136:16-20.

CTI has one main customer, GEICO Insurance Company ("GEICO"), for which it provides a variety of roadside services on behalf GEICO's insured motorists.  *Id.* 6:18-24, 89:17-23, 136:21-25.  When an insured motorist requires roadside assistance, GEICO contacts CTI, which in turn dispatches a tow truck to the requested service location.  *See id.* 7:3-6.

From 2010 to December 2020, Green worked as CTI's dispatcher.  *Id.* 4:17 – 5:15, 63:8-13.  At the time of her hire and throughout her employment, CTI never provided Green any formal or written terms of employment.  *Id.* 93:14-16, 140:19-21.  She worked almost exclusively from home and under Sanjay's supervision.  *Id.* 7:13-23, 9:11-14, 100:25 – 101:2, 135:8-12, 140:15-18, 153:4-8.  CTI paid her a flat annual salary on a biweekly basis.  *Id.* 33:23 – 34:1, 105:25 – 106:7; *see also* Ex. 9.  During the years 2018 through 2020, Green earned $49,500.00, $50,200.00, and $51,359.00, respectively.  Ex. 3; *see also* Trial Tr. 34:2-11.  CTI did not provide any benefits, health insurance, or retirement plan.  Trial Tr. 35:19-25.

Green's dispatcher job at CTI was her primary source of income, and she struggled to

---

[1] To avoid confusion between father and daughter, the Court refers to them by their first names.

make ends meet.  Consequently, Green was "always in debt" and had to borrow money from Sanjay to pay her bills.  *Id.*  45:3-15, 55:8-12; *see also id.* 42:12-24.  At the time of trial, Green owed Sanjay over $3,000 in outstanding loans.  *Id.* at 55:8-12.

Green testified that as CTI's dispatcher, she regularly handled between 75 and 100 calls each day.  *Id.* 14:19-23.  She worked seven days a week, accepting GEICO calls for service between the hours of 6:00 a.m. and 10:00 p.m.  *Id.* 5:16-21, 7:3-6, 9:25 – 10:1, 35:14-18, 43:4-6, 80:18-20.  For each call, Green was expected to dispatch the closest available CTI driver.  *Id.* 16:1-5, 20:10-11, 120:21-23.  To facilitate this process, GEICO required that CTI use a dispatch software program called "Towbook."  *Id.* 6:10 – 7:2, 11:1-12.  Towbook allowed GEICO to send the calls-for-service electronically to CTI.  *Id.* 19:1-17, 144:12-20.  CTI had provided Green a company cell phone that she used solely to transfer the GEICO Towbook messages to her personal electronic devices during business hours.  *Id.* 7:24 – 9:24.  Green also installed the Towbook "app" on her personal computer and cell phone, and she used a username and password specifically assigned to her to access the software.  *Id.* 10:18 – 11:17.  For every call, Green tracked the CTI driver locations and monitored the dispatch, also using Towbook.  *Id.* 16:23 – 17:3, 95:17 – 96:3.  On average, each incoming call took about five minutes from request to dispatch.  *Id.* 19:18-23, 96:4-14.

After the call was dispatched to a CTI driver, Green would monitor each driver's progress for the duration of the job.  *Id.* 22:17-18, 23:9-12, 31:13-16, 32:2-5, 33:6-9.  Towbook provided an estimated time of arrival for each dispatch.  *See id.* 121:19 – 122:5.  If a driver appeared to be running behind, Green would communicate with the driver by phone or text.  *Id.* 17:4-8, 18:8-13, 20:20 – 21:4, 36:15-17, 141:1-4.  For each dispatch, Green would also confirm that the job had been completed or "closed out."  *Id.* 21:20 – 22:18.

3

At trial, the parties principally disputed the number of hours Green actually worked in any given week between 2018 and 2020.  Green testified that she handled a high volume of calls all day, every day, with few breaks.  *See id.* 43:4-6, 70:6-16.  Although CTI stopped accepting calls at 10:00 p.m., Green often worked later to make sure that the day's dispatches were closed out.  *See id.* 67:20-23, 68:9-17.  For instance, if Green received a call just before 10:00 p.m., she would work until it was completed.  *Id.* 33:6-11.  As she put it, "I really didn't live a life.  I just had a phone in my hand all day long until I went to bed."  *Id.* 29:23-24.

Because she had Towbook on her cell phone, she worked while walking her children to the school bus, helping them with homework, meeting with their teachers, cooking, eating meals, and bathing.  *Id.* 29:15 – 30:15, 43:16-24, 74:23 – 75:7.  Green even worked when she had been in the hospital emergency room for 24 hours of observation.  *Id.* 30:20-25, 75:18 – 76:13.  Green worked on holidays, including Thanksgiving and Christmas.  *Id.* 81:4-9.  Green also missed important family events, including two funerals and her daughter's graduation.  *Id.* 42:18 – 43:3.  Although Green sometimes traveled with her family, she always worked remotely.  *Id.* 31:1-8, 35:22-25.  According to her estimate, she never worked less than 100 hours in any given week. *Id.* 80:6-8.

Although CTI kept no specific timekeeping records, the Towbook records corroborate Green's estimation of hours worked.  The Towbook records—generated by Defendants and provided in discovery[2]—reflect all tow calls from GEICO for the years 2018 through 2020.  The records include the dates and times that CTI received each dispatch call and the CTI dispatcher who received the call.  Trial Tr. 28:22 – 29:6, 113:7 – 114:14.  The Towbook records number

---

[2] Defendants produced the Towbook records in response to Green's request for production seeking documents that reflected work that Green had performed at CTI.  *See* ECF Nos. 23 (correspondence regarding production of Towbook records) & 25-1 (memorandum informing the Court that Defendants had produced the documents).

some 1500 pages, with each page cataloguing nearly 50 tow calls.  For every tow call, Green is identified as the dispatcher who received it.

Predictably, Sanjay and Tanvi disputed at trial that Green actually worked the hours reflected in the Towbook records.  They testified that they both relieved Green from her duties every day for hours at a time.  Tanvi, who testified in the presence of her father, insisted that she worked four to five hours every day dispatching calls, and that her father would dispatch calls for eight additional hours each day.  *Id.* 131:7-22.  Tanvi further claimed that Green set her own hours and, whenever Green decided not to work, she could call either Tanvi or Sanjay to relieve her on a moment's notice.  When pressed as to the logic of this business arrangement, Tanvi described it as "an inconvenience for us, most certainly, but as a business, you have a special little heart for your own business where you have to do what you have to do."  *Id.* 104:24 – 105:1.  Sanjay's testimony echoed that he and his daughter regularly relieved Green for up to thirteen hours of dispatch time *every day*.  *Id.*  138:18 – 139:5, 144:1-3.

## II.    Analysis

### A.    Liability

Green maintains that for the three years predating her lawsuit,[3] Defendants violated the MWHL for failure to pay her the legal minimum wage (Count II), and the FLSA and MWHL for

---

[3] Pursuant to the FLSA, the limitations period is extended from two to three years where the evidence demonstrates that a defendant's violations were willful.  29 U.S.C. § 255(a).  An employer acts willfully when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Aviles-Cervantes v. Outside Unlimited, Inc.*, 276 F. Supp. 3d 480, 491 (D. Md. 2017) (quoting *Aguilar v. ALCOA Concrete & Masonry, Inc.*, No. TDC-15-0683, 2015 WL 6756044, at *2 (D. Md. Nov. 4, 2015)).  Moreover, "where employers are aware of their obligations under the FLSA and, nonetheless, fail to comply, the violation is willful." *Ramirez v. 316 Charles, LLC*, No. SAG-19-3252, 2020 WL 7398807, at *8 (D. Md. Dec. 17, 2020).  At a minimum, Defendants exhibited reckless disregard for whether they violated the wage and hour laws as to Green.  CTI is a small operation with its owner, Sanjay Anand, involved in all aspects of the business.  Sanjay knew since 2010 that Green worked well beyond forty hours a week, but studiously avoided investigating whether he paid her a legally compliant wage.  Trial Tr. 66:5-15, 67:20-25; Ex. 6 at 28:10-15.  Nor did CTI make any effort to educate Green on her rights under the FLSA.  Ex. 7 at 94:14 – 95:5.  Thus, it is beyond serious dispute that Defendants' violations were willful.

failure to pay overtime (Counts I & III).  Green also claims that she is entitled to back wages under the MWPCL (Count IV).  The MWHL requires employers to pay the statutory minimum wage for up to forty hours worked in any given work week.  Md. Code Ann., Lab. & Emp. § 3-413(b).  To prevail on a minimum wage claim, a plaintiff "must show that [she] did not receive compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate during a given week."  *See Castillo v. D&P Prof. Servs., Inc.*, No. DKC 14-1992, 2015 WL 4068531, at *3 (D. Md. July 2, 2015) (citing *Blankenship v. Thurston Motor Lines, Inc.*, 514 F.2d 1193, 1198 (4th Cir. 1969)).

The parties do not dispute that the applicable statutory minimum hourly wage was $11.50.  Prince George's Cnty. Code § 13A-117(d); *see Qun Lin v. Cruz*, 247 Md. App. 606, 632 n.10 (2020) (applying county minimum wage where it was the highest among the FLSA, the MWHL, and the county code).  As to overtime, or any hours worked in excess of 40 in any given week, the FLSA, MWHL, and MWPCL require an employer pay one-and-a-half times the applicable hourly wage.  29 U.S.C. § 207(a)(1); *see also Quickly v. Univ. of Md. Med. Sys. Corp*, No. CCB–12–321, 2012 WL 4069757, at *6 (D. Md. Sept. 14, 2012) (MWHL is "state parallel" of FLSA and pleading requirements "mirror those of the federal law"); *Chavez v. Besie's Corp.*, No. GJH–14–1338, 2014 WL 5298032, at *4 (D. Md. Oct. 10, 2014) ("[A] violation of the MWPCL depends entirely on violation of another law, either the MWHL or the FLSA[.]").

To prevail on either the regular or overtime claims, Green must convince the Court by preponderant evidence that she worked the number of hours for which she is claiming compensation.  *Melgar Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-13-01888, 2016 WL 2990720, at *3-4 (D. Md. May 20, 2016) (minimum wage and overtime); *Carrera v. EMD Sales, Inc.*, No. JKB-17-3066, 2021 WL 1060258, at *5 (D. Md. Mar. 19, 2021) (overtime)

(citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1996)).  Although the plaintiff bears

the initial burden of proof, "[t]his burden is light, especially when the employer's records are

inaccurate or inadequate."  *Randolph v. PowerComm Constr., Inc.*, 309 F.R.D. 349, 362-63 (D.

Md. 2015) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)); *see also*

*Donovan v. Kentwood Dev. Co., Inc.*, 549 F. Supp. 480, 485 (D. Md. 1982) (recovery under the

FLSA should not be denied simply "because proof of the number of hours worked is inexact or

not perfectly accurate").  When the burden is satisfied, the employer must then "come forward

with evidence of the precise amount of work performed or with evidence to negative the

reasonableness of the inference to be drawn from the employee's evidence."  *Tyson Foods, Inc.*

*v. Bouaphakeo*, 577 U.S. 442, 456 (2016) (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687-

88).

For both the minimum wage and overtime claims, the central issue for resolution is the

number of hours Green worked in any given week between 2018 and 2020.  Because CTI kept

no specific time records, Green points to the Towbook records to corroborate her estimated 100

hours per week.  *See* Trial Tr. 134:22-24; Ex. 7 at 32:3-10.  As to the Towbook records,

Defendants vaguely dispute their accuracy, but offer no principled reason to discount them.  Trial

Tr. 115:13-23, 117:8-18.  Thus, the Court must resolve which party has the better of the evidence

as to the number of hours Green worked.

After hearing the testimony and observing the witnesses, the Court finds that Green

worked 100 hours a week during the relevant years.  Green credibly testified that she worked all

day, every day, and that her dispatch duties dominated her life entirely.  Her testimony is

supported by the only records that CTI kept, which reflect that Green answered more than 70,000

calls between January 1, 2018, and December 13, 2020, or roughly 70 calls per day.  *See*

*generally* Ex. 1.  Further, the Towbook records support that the calls began just before 7:00 a.m. and continued until around 9:00 p.m., but that Green received calls as early as 6:00 a.m., *see, e.g.*, *id.* at 309 (Sept. 17, 2018), and as late as 9:51 p.m., *id.* at 112 (Mar. 15, 2018).  Green also submitted exemplar screen captures from her cell phone that corroborate her communications with the tow drivers as late as 9:55 p.m.  Ex. 5 at 10; Trial Tr. 41:13 – 42:17.  *Compare* Ex. 5 at 11 (Green text sent to driver June 4, 2018, at 5:46 p.m. "please try and be on time cause we haven't stop[ped] being busy all day"), *with* Ex. 1 at 189 (11 calls received between 5:00 and 6:00 p.m.).

By contrast, the testimony of Sanjay and Tanvi on Green's work hours defies credulity. Green had been hired as CTI's only dispatcher, and her sole responsibility was to dispatch the GEICO calls.  Yet according to the Anands, they relieved Green *every day* for most of the fifteen hours that CTI was open for business.  Defendants, therefore, would have the Court believe that CTI paid roughly $50,000 a year for a dispatcher who worked only two to three hours a day.

Further, the Anands testified that Green made her own hours, every day, and with no advance warning.  According to Tanvi, Green could start or stop working whenever she wanted simply by calling to say she was "going off."  Trial Tr. 102:19-25; 105:4-17.  Defendants supposedly accepted this arrangement even though, for much of the relevant time, Tanvi held down a full-time job with the federal government, *id.* 91:13-92:2, 129:24 – 130:2, and Sanjay handled all day-to-day operations at CTI, to include maintenance on his fleet of tow trucks as well as hiring and supervising his drivers.  *Id.* 93:3-9, 130:10 – 131:1, 138:3-7, 167:4-17.  Sanjay also owned a separate towing business for which he dedicated seven to ten hours per week.  *Id.* 137:9-12, 160:15-19, 161:12-22.  Notably, Defendants could produce *no* records—phone, business, or otherwise—to corroborate that they relieved Green 12 to 13 hours every day.  In

8

short, their testimony bore little indicia of veracity or reliability, and so the Court rejects it.

Accordingly, the Court finds that between January 2018 and December 2020, Green worked 100 hours per week.  Further, it is undisputed that Defendants paid Green a bi-weekly salary of $1,900, Ex. 9, or $9.50 per hour for all hours worked ($1,900 divided by two hundred-hour workweeks).  This amount falls well below the statutory minimum wage of $11.50 per hour.  Nor was Green paid the overtime rate for those hours worked in excess of 40 per week.  Thus, the Court easily concludes that Defendants violated the MWHL and the FLSA.

The Court next turns to damages.

### B.  Damages

#### 1. Back Wages

Having found that Green worked 100 hours per week for the period from 2018 through her departure from CTI in December 2020 (152 weeks), Green is entitled to be paid the statutory minimum wage of $11.50 for the first 40 hours she worked every week.  Accordingly, for three years, Green was entitled to total regular time compensation of $69,920 ($11.50 x 40 hours a week x 152 weeks).  For the 60 hours per week of overtime, Green should have been compensated at a rate of $17.25 per hour (time and a half), totaling $157,320 for three years ($17.25 x 60 hours x 152 weeks).  All totaled, Green should have been paid $227,240 in combined regular and overtime wages for the three years in question.  Green had been paid $151,059 in salary.  Thus, after crediting her salary against the wages owed, Green is entitled to a total of $76,181 in back wages ($227,240 - $151,059).[4]

#### 2. Enhanced Damages

Green asks that the award be doubled as liquidated damages under FLSA.  *Rogers v.*

---

[4] Green urges the Court to award her a total of $157,320 in unpaid wages by simply multiplying the number of overtime hours Green worked weekly (60) by the hourly time-and-a-half rate of $17.25 for the applicable 152

*Savings First Mortg.*, 362 F. Supp. 2d 624, 637 (D. Md. 2005) (quoting 29 U.S.C. § 216(b)). The FLSA accords a presumption in favor of awarding liquidated damages, unless the employer demonstrates "that his failure to obey the statute was *both* in good faith *and* predicated upon such reasonable grounds that it would be unfair" to award liquidated damages. *Id.* at 637-38 (quoting *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960)); *see also Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). Defendants have put forward no evidence demonstrating any good faith efforts to comply with the wage and hour laws. Thus, Green is, at minimum, entitled to liquidated damages in an equal amount to her unpaid wages.

However, the MWPCL authorizes an award of treble damages. Md. Code Ann., Lab. & Emp. § 3-507(b) (permitting an award "not exceeding 3 times the wage" where the employer was not withholding wages "as a result of a bona fide dispute"); *see also Admiral Mortg., Inc. v. Cooper*, 357 Md. 533, 549-50 (2000). And although the Court may not award both liquidated and treble damages, *e.g. Falaiye v. CCA Academic Resources, LLC*, No. PX-16-cv-2887, 2017 WL 4098740, at *5 (D. Md. Sept. 14, 2017), treble damages are appropriate where the plaintiff has demonstrated that she suffered consequential damages because her employer failed to pay her the statutory wage owed. *Villatoro v. CTS & Assocs., Inc.*, No. DKC-14-1978, 2016 WL 2348003, at *3 (D. Md. May 4, 2016) (internal brackets, quotations, and citations omitted).

Consequential damages "can occur when employees who are not properly paid are unable to meet their financial obligations[.]" *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 799

---

weeks. Trial Tr. 172:6 – 173:10. This calculation fails to account for the salary she had been paid. The above calculations accurately reflect the total wages owed and credit the amounts paid against that sum to determine unpaid wages. *See Castillo*, 2015 WL 4068531, at *5. *See also Acosta v. Vera's White Sands Beach Club, LLC*, No. 16-cv-00782-PX, 2019 WL 1767147, at *7 (D. Md. Apr. 22, 2019) (finding back wages calculation "well supported" where plaintiff Department of Labor "subtracted any direct wages already received"); *Acosta v. Romero Landscaping, Inc.*, No. PWG-17-2587, 2019 WL 4447233, at *9 (D. Md. Sept. 17, 2019) ("[A]n employer may credit certain overtime payments already made to employees against overtime payments owed to the employees[.]") (quoting *Boutell v. Craftmaster Painting, LLC*, No. 17-317-BBC, 2018 WL 6519065, at *3 (W.D. Wis. Dec. 11, 2018)).

(D. Md. 2010) (quoting *Lopez v. Lawns 'R' Us*, No. DKC 07-cv-2979, 2008 WL 2227353, at *4 (D. Md. May 23, 2008)).  Here, Green credibly testified that because she was not paid the requisite wage for the hours worked, she "was always in debt" and "always had to borrow money" from Sanjay simply to pay her bills.  Trial Tr. 44:11 – 45:15; *see also* Ex. 9 (earnings statement showing $3,300 in cash advances for 2020).  Thus, Green has provided substantial evidence supporting an award of treble damages.  *Cf. Diaz v. Mi Mariachi Latin Restaurant Inc.*, No. GJH-18-636, 2019 WL 528185, at *3-4 (D. Md. Feb. 11, 2019) (awarding treble damages where plaintiff "was forced to take on debt to afford basic expenses because Defendants did not pay him minimum wage or overtime wages").  At the same time, CTI has put forward no evidence that it withheld wages as part of a bona fide dispute.  The Court will therefore award treble damages.

### 3. Interest

Green requests pre- and post-judgment interest.  ECF No. 1 at 8.  The Court declines to award pre-judgment interest because the treble damages award "'more than adequately compensates' for the delayed payment[.]"  *See Ramirez*, 2020 WL 7398807, at *9 (quoting *Masters v. Md. Mgmt. Co.*, 493 F.2d 1329, 1334 (4th Cir. 1974)).  As to post-judgment interest, it "is due on awards under FLSA in accordance with 28 U.S.C. § 1961."  *Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 2012 WL 5409733, at *10 (D. Md. Nov. 5, 2012) (quoting *Kennedy v. A Touch of Patience Shared Hous., Inc.*, 779 F. Supp. 2d 516, 527 (E.D. Va. 2011)); *see also Flores v. Environmental Trust Solutions, Inc.*, No. PWG-15-3063, 2016 WL 5459106, at *4 (D. Md. Sept. 28, 2016).  That said, the Court need not expressly award post-judgment interest because Green is entitled to such interest by operation of the statute.  *Choice Hotels Int'l, Inc. v.*

11

*Jai Shree Navdurga, LLC*, No. DKC-11-2893, 2012 WL 5995248, at *3 (D. Md. Nov. 29, 2012).

### 4. Attorneys' Fees and Costs

Attorneys' fees and costs are recoverable under the FLSA and companion state statutes. *See* 29 U.S.C. § 216(b); *see also* Md. Code Ann., Lab. & Emp. §§ 3–427(a)(3) & 3–507.2(b). Green seeks attorneys' fees and costs, ECF No. 1 at 8, but she has not provided any evidence from which the Court could calculate reasonable award. The Court will grant Green 14 days to file a petition for attorneys' fees and costs that conforms with this Court's Local Rules. *See* D. Md. Loc. R. 109.2.b & App'x B.

### III.    Conclusion

For the foregoing reasons, judgment will be entered in favor of Plaintiff Lynnette Elizabeth Green for a total award of $228,543. Green is permitted to move for reasonable attorneys' fees and costs. A separate Order follows.

February 13, 2023                                            /s/
Date                                                 Paula Xinis
                                                 United States District Judge